VILLANTI, Judge.
The State appeals the trial court’s order granting Carole Sepanik’s motion to suppress her interview with police. We reverse because the trial court erroneously concluded that Sepanik, post-Miranda,[1] reasserted her right to remain silent when she expressed a desire to go home during the interview.
Police received a call from the victim of a shooting reporting that someone had shot into his bedroom, and Sepanik was implicated in the shooting. Shortly thereafter, police found Sepanik driving nearby and carrying a firearm. She was arrested and taken to the police station for questioning. At the station, police read Sepan-ik her Miranda rights and she knowingly and voluntarily agreed to talk to them. However, over the course of the interview she volunteered a number of times that she did not want to go to jail[2] and wanted to go home. At times Sepanik also coupled her comments with either her need to take care of her grandparents or her need to be available for her son. Thereafter, Sepanik gave incriminating statements in her interview.
After reviewing the videotape of Sepan-ik’s interview, the trial court concluded that Sepanik had only initially knowingly and voluntarily waived her Miranda rights but subsequently implicitly reasserted her right to remain silent by saying that she wanted to go home. The trial court found that “[e]ach time the statement [to go home] was made, law enforcement did not clarify the Defendant’s intent and they certainly did not cease questioning,” and it concluded that “a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent.” Thus, the trial court suppressed Sepanik’s statements. Under the circumstances of this case, this was error.
An appellate court reviewing a trial court’s ruling on a motion to suppress is required to interpret the evidence and all reasonable inferences and deductions from the evidence in the manner most favorable to sustaining the trial court’s ruling. Bailey v. State, 31 So.3d 809, 812 (Fla. 1st DCA 2009). Therefore, as a general rule, a trial court’s conclusions on the voluntariness of a confession will not be disturbed unless clearly erroneous. State v. Crosby, 599 So.2d 138, 141 (Fla. 5th DCA 1992). But this “clearly erroneous” standard does not apply with full force when the trial court’s determination turns upon the meaning of transcripts, depositions, other documents, or recordings which are presented in essentially the same form to the appellate court because the trial court does not have a special vantage point in such cases. Almeida v. State, 737 So.2d 520, 524 n. 9 (Fla.1999); Bailey, 31 So.3d at *979 812; Crosby, 599 So.2d at 141. In this case, the videotape of Sepanik’s interview was part of the record on appeal and this court had the same opportunity as the trial court to review the videotape. And there is no factual dispute about what Sepanik said. The issue is purely one of law, i.e., whether Sepanik’s various iterations that she wanted to go home required police to stop their interrogation to clarify her intent, as held by the trial court.
In Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the United States Supreme Court held that a suspect’s post-Miranda ambiguous or equivocal reference to an attorney does not require law enforcement to stop questioning to clarify the suspect’s statement. In State v. Owen, 696 So.2d 715, 718 (Fla.1997), the Florida Supreme Court relied on Davis and held that police are not required to ask clarifying questions if a suspect makes an equivocal or ambiguous request to terminate interrogation after he has validly waived Miranda rights.
In Owen, the court was faced with two statements the defendant made during questioning, “I don’t want to talk about it” and “I’d rather not talk about it.” Id. at 717 n. 4. The court explained that “ ‘[a] suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent.’ ” Id. at 718 (quoting Coleman v. Singletary, 30 F.3d 1420, 1424 (11th Cir. 1994)). “To require the police to clarify whether an equivocal statement is an assertion of one’s Miranda rights places too great an impediment upon society’s interest in thwarting crime.” Id. at 719. The defendant’s two statements quoted above were equivocal. Id.
Courts have followed Owen in cases with facts more compelling than the facts of this case. See, e.g., Bailey, 31 So.3d at 811 (holding that defendant’s statement, “Man, I don’t really want to talk about that ... [clause I don’t want no record of it on tape” was not enough to revoke the defendant’s prior Miranda waiver); Alvarez v. State, 15 So.3d 738, 742-43 (Fla. 4th DCA 2009) (holding that defendant’s post-M¿-randa statement two-thirds into police interview, “I really don’t have nothing to say,” was not an unambiguous revocation of his waiver of right to remain silent; thus police were not required to end interrogation or clarify defendant’s intent); Ford v. State, 801 So.2d 318, 319-20 (Fla. 1st DCA 2001) (finding that defendant’s repeated statement during interrogation, “Just take, me to jail,” was not an unambiguous invocation of the right to remain silent and interrogator did not have to cease questioning or clarify whether defendant wanted the interrogation to end).
To further illustrate, in State v. Davis, 971 So.2d 1017, 1018 (Fla. 1st DCA 2008), police questioned the defendant about his father’s death after he waived his Miranda rights. During the interview the defendant stated on several occasions that he wanted to go home. Id. An officer asked the defendant, “Which one of these guys do you feel more comfortable talking with?” and the defendant replied, “None of ‘em.” Id. Police continued questioning him and the defendant confessed to the crime. Id. The trial court granted suppression, concluding that his statement “none of ‘em” was an unequivocal assertion of the defendant’s right to terminate questioning. Id. The district court reversed the suppression order based on Owen, noting that “the statement made by [defendant] was more, not less, equivocal than the statements made in Owen.” Id. at 1019.
If “none of 'em” is not a clear assertion of the defendant’s right to remain silent, see Davis, 971 So.2d at 1018, we fail to see how “I want to go home” is *980 anything more than an expression of stream of consciousness any defendant in custody would think. If the rule were otherwise, then virtually any stream-of-consciousness type of statement uttered by a suspect could be deemed as requiring clarification for Miranda purposes. This would create an untenable predicament for law enforcement which “places too great an impediment upon society’s interest in thwarting crime.” Owen, 696 So.2d at 719.
Finally, we analyze the context of Sepanik’s statements, recognizing that “context is generally as important, if not more important, than the exact words a suspect uses in a statement that is alleged to be an invocation of the right to remain silent.” Bailey, 31 So.3d at 814-15. Before she was read Miranda rights, Sepanik stated that she did not know why she was at the station and that she just wanted to go home. She asked, “After I talk to you, can I go home?” She thereafter agreed to talk to the detective after knowingly and voluntarily waiving Miranda rights. In fact, about two hours into the interview, Sepanik again told a detective, “I’ll just wait if you need to talk to me.” She coupled her comments a number of times with either her need to care for her grandparents or be available for her son. Although Sepanik expressed a number of times during the interview her desire to go home, alone or in context her statements were not a clear, unequivocal, and unambiguous assertion of the right to remain silent. Here, “[t]he words on the recording simply [did] not come across as a clear assertion” of the right to remain silent. Bailey, 31 So.3d at 816.
By suppressing the evidence the trial court erroneously failed to follow Davis and Owen because without any contextual justification it interpreted Sepanik’s nebulous comments as a distinct and clear directive that questioning cease. Therefore, pursuant to Owen, we reverse the suppression order and remand for further proceedings.
Reversed and remanded.
WALLACE and MORRIS, JJ., Concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. At times Sepanik said, "I can't go to jail again,” apparently in reference to a previous incident in which she had been taken to jail as a result of an allegation made by her ex-husband.